UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE R. HODGES,

        Plaintiff,                              Case Number: 2:09-cv-13542

v.                                              Paul D. Borman
                                              United States District Court
AT&T MOBILITY DIVISION
also known as Cingular Wireless,

        Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Eddie Hodges ("Plaintiff" or "Hodges") filed this racial discrimination claim against Defendant AT&T Mobility Division, a/k/a Cingular Wireless[1] ("Defendant" or "AT&T") on September 9, 2009.  The matter is before the Court on Defendant's motion for summary judgment. (Dkt. No. 12.)  Plaintiff has filed a response (Dkt. No. 17), and Defendant has filed a reply.  (Dkt. No. 14.)  Oral arguments were heard on June 1, 2011.  For the following reasons, the Court GRANTS Defendant's motion for summary judgment.

### I.    Background

Plaintiff was hired by Defendant in April 2006 as a business account executive, and was located in Kalamazoo, Michigan.  (Def.'s Br. in Supp. of its Mot. for Summ. J. 1.)  Plaintiff was a salaried, at-will employee who could be terminated at any time for any or no reason.  (*Id.*)  In his deposition, Plaintiff acknowledged that he was an at-will employee.  (Def.'s Br. Ex. G, Deposition

---

[1] There seems to be some dispute over Defendant's proper title.  Defendant claims that its proper name should be AT&T Mobilitiy LLC, f/k/a Cingular Wireless LLC.  (Dkt. No. 12, at 1.)

of Eddie R. Hodges 72:25-73:7, Jan. 21, 2010.)  Plaintiff had many different supervisors during his

tenure at AT&T.  When he began in 2006, his supervisor was Robert Harrison.  (*Id.* at 56:6-11.)

Harrison held that position until January 2007, when he took a different position and relocated to

Farmington Hills.  (*Id.*)  Starting in January 2007, Jerry Paulson was Plaintiff's supervisor.  (*Id.*)

Jerry Paulson was Plaintiff's manager from January 2007 until August 2007, when Paulson was fired

for credit card fraud.  (*Id.* at 47:7-16.)  After Paulson was fired, Plaintiff claims that there was an

"open position" until Defendant found someone to fill the position.  (*Id.* at 48:25-49:3.)  In light of

Paulson's absence, a man named David Aspinall filled out Plaintiff's performance review for the

period starting 1/1/07 and ending 12/31/07.  (Pl.'s Resp. Ex. 13.)  Plaintiff claims that he reported

to Aspinall after Paulson was fired.

Jim Acuff officially took over as Plaintiff's manager in January 2008.  (Hodges Dep. 49:4-

12.)  Acuff was Plaintiff's supervisor until he was terminated in August 2008.  (*Id.*)  Defendant

claims that Plaintiff was fired for failing to notify his immediate supervisor before applying for

internal online job postings and for falsifying corporate documents, which violated Defendant's

Code of Business Conduct.  (Def.'s Br. 5.)  Defendant determined that Plaintiff falsified company

documents because in order to complete an application for an internal job posting, an employee must

affirm that he/she has spoken to their supervisor about applying before-hand, and he had not.  (Pl.'s

Resp. Ex. 7.)

Plaintiff brought this single-count Complaint alleging he was wrongfully terminated and

discriminated against because he is African American.  Essentially, there are two issues Plaintiff

believes were discriminatory.  First, he claims that in February 2008 Acuff inappropriately asked

him to provide a doctor's note after he missed a few days of work while he was in the hospital.

Second, Plaintiff contends that his termination was discriminatory.  (Hodges Dep. 31:15-32:4.)

### A.       The Request For A Doctor's Note

In February 2008, Plaintiff was hospitalized due to two pulmonary embolisms.  As a result, he missed a few days of work.  Acuff asked Plaintiff to submit a doctor's note clearing him to return to work.  (Def.'s Br. 2.)  The email Acuff sent to Plaintiff read "Ed, good to hear you are better.  I will just need a note from the doctor stating it is safe for you to resume working."  (Hodges Dep. 97:4-9.)  Originally, Plaintiff indicated he was going to comply with the request, stating "[s]ure.  I have a follow-up blood work on Monday morning so I'll have them send it then."  (*Id.* at 15-20.)  Plaintiff explained that he responded that way because he did not want to get into trouble, but he always thought the request was inappropriate and "felt that it was race discrimination because [he] was asked to supply something that [he didn't] think other employees were asked to supply."  (*Id.* at 95:21-24, 98:1-8.)

Concerned that the request was inappropriate, Plaintiff contacted HR representative Virginia Forbes who told him that he did not need to submit any kind of medical documentation to return to work.  (*Id.* at 100:1-8.)  Acuff was also told by "corporate" that his request was improper, and he received "verbal counseling" about it.  Acuff stated that "[a]fter Eddie Hodges advised me, and Human Resources confirmed, that it was improper to request medical documentation from Eddie Hodges, I immediately dropped my request and Eddie Hodges returned to work without submitting medical documentation and without further incident."  (Def.'s Br. Ex. B, Affidavit of Jim Acuff ¶ 8.)[2]

_____

[2] Defendant never dated/notarized the Acuff affidavit submitted to the Court.  At oral argument, Defense counsel stated that Acuff had a notarized copy of his affidavit which he would forward to his attorney who would then submit it to this Court.  Plaintiff did not object to

### B.      Internal Job Postings

At some point, Plaintiff decided that he wanted to explore other employment opportunities at AT&T.  Accordingly, he began self-nominating himself for openings posted on the company's internal job listing.  There are three corporate requirements employees must meet when applying for an internal job opening.  (Def.'s Br. Ex. D.)  Before applying, employees must affirm that they (1) have been in their current position for at least 18 months; (2) have discussed their releasability with their current supervisor; and (3) have at least 50% of the skills identified as required for the position.  (*Id.*)  Defendant's policies also require any manager posting internal job listings to notify the applying-employee's current supervisor when an application is received.  (*Id.*)  At issue in this case is whether Plaintiff complied with the second requirement about discussing his releasability with his supervisor before applying.

Plaintiff testified that he knew he had to talk to his supervisor before applying, and that he talked to Virginia Forbes at HR about feeling uncomfortable speaking with Acuff about applying for internal job postings.  (Hodges Dep. 56:10-57:20.)  Plaintiff said that he had "a feeling of discomfort, an uneasiness that's really hard to explain" about talking to Acuff due to unspecified past interactions with him.  (*Id.*)  Plaintiff explained that he was concerned that Acuff would take Plaintiff's desire to transfer as something derogatory to him and would clamp down on him as a result.  (*Id.*)  Forbes told Plaintiff that if he was uncomfortable talking to Acuff she would be happy to sit in on the phone call.  (*Id.*)  Ultimately, Plaintiff decided that he would just have the meeting with Acuff himself.  (*Id.*)

Accordingly, in January 2008, Plaintiff and Acuff had a phone conference about Plaintiff's

---

this.  The Court has accepted it as a sworn statement.

desire to apply for other positions.  Plaintiff alleges that he told Acuff he was looking for growth

opportunities within AT&T and that he wanted to notify him as the policy requires.  (Hodges Dep.

110:3-25.)  Plaintiff claims that "he [Acuff] just indicated that, you know, go ahead, take a look."

(*Id.*)  He also alleges that "we agreed and, as far as I'm concerned, at that point I had approval to go

forward and apply for positions."  (*Id.*)  Plaintiff, however, acknowledges that he had no other

conversations regarding his releasability with Acuff prior to his multiple applications in response

to postings.  (*Id.*)

Defendant contends that Acuff did not give Plaintiff a blanket authorization to apply for any

future job openings he desired during the January 2008 meeting.  When Acuff found out that

Plaintiff had continued applying for jobs without notifying him about each specific application,

Acuff sent Plaintiff an email, dated July 22, 2008, which stated "I know we have talked about this

before and nothing has changed.  If you wish to self nominate for internal positions you will need

to make sure I am in the loop."  (Def.'s Br. 4; Ex. 1 to Ex. B.)[3]  Plaintiff claims that he responded

to this email by telling Acuff that going forward he would comply with Defendant's interpretation

of the policy, but there is no record of such an email.  (Hodges Dep. 120:14-121:11.)  On August

18, 2008, however, Acuff sent Plaintiff another email after learning that Plaintiff had applied for 17

positions since August 2007 without notifying him before any specific application.  (Def.'s Br. 4;

---

[3] Defendant further contends that Acuff spoke to Plaintiff about the notification policy on other occasions and specifically told him that he needed to inform Acuff of each position he was applying for in November 2007, and "coached" him in March 2008 for failing to do so.  (Def.'s Br. 4 n.2.)  Plaintiff denies these conversations and/or coaching sessions took place, and Defendant has acknowledged that for purposes of this motion the Court must assume Plaintiff's version of the facts is correct.  (*Id.*)  Defendant claims that even so, after the July 22 email he was aware that AT&T's policy required him to notify his supervisor before *each* application. (*Id.*)

Ex. F.) Only six of those applications though were submitted after January 2008 when Acuff

officially became Plaintiff's supervisor. (Ex. F.) Plaintiff, however, agreed that at least two of those

applications were submitted after the July 22, 2008 email from Acuff. (Hodges Dep. 125:15-18.)

In response to the August 18 email, Plaintiff wrote:

> I had a conversation with Jerry before he left regarding my interest
> in looking into other segments for opportunities. There was a small
> period of time in the fall of last year where we had an "open"
> management position, and we didn't know who would be
> permanently taken over the group. You and I had a conversation in
> January regarding my interest in looking for opportunities in other
> segments as well.

(Def.'s Br. Ex. F.) At his deposition, Plaintiff explained that "my understanding as far as the self-

nomination process is that once you have discussed your interest in self-nominating with your

manager and notified them of your interest in self-nominating there was no need to have an

individual discussion over each individual posting that you apply for." (Hodges Dep. 127:8-14.)

Ultimately, Acuff and HR representative Virginia Forbes concluded that Plaintiff had

violated the notification policy and also falsified corporate documents when he checked that he had

discussed his availability with his supervisor before applying for each position. (Acuff Aff. ¶ 23;

Def.'s Br. Ex. C, Affidavit of Virginia Forbes ¶¶ 10-13, Apr. 29, 2010.) Both Acuff and Forbes

stated that they did not take Plaintiff's race into account when deciding to fire him. (Acuff Aff. ¶

24; Forbes Aff. ¶ 15.) The decision to fire Plaintiff was also approved by HR, the Vice President

of Sales, and the Director of Sales. (Acuff Aff. ¶ 23; Ex. 2 to the affidavit.)

After learning that he had been fired, Plaintiff asked for the decision to be investigated by

Defendant's legal department. (Hodges Dep. 136:7-8.) The investigation lasted approximately four

weeks, at the end of which the legal department decided to stand by the decision. (*Id.* at 136:14-

137:17.)

Plaintiff then filed a claim with the EEOC on September 22, 2008.  The EEOC found that there was no evidence to support a finding of discrimination on the basis of race.  (Compl. at 4.)[4]

## II.    Standard of Review

Summary judgment is only appropriate if there are no genuine issues of material facts and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 487 (6th Cir. 2006).  When applying this standard, courts must view all materials, including all of the pleadings, in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the responsibility of establishing no issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets its burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial.  *Id.* at 324.  The non-moving party must do more than show that there is some abstract doubt as to the material facts.  It must present significant probative evidence the issue exists in order to defeat a motion for summary judgment.  *See Moore*

---

[4] At oral argument, Plaintiff argued that Defendant's motion should be denied because during AT&T and the EEOC's investigations Acuff misrepresented certain information regarding when he supervised Plaintiff.  The Court has not given any deference to these decisions, however, and has reviewed Defendant's conduct in the light most favorable to Plaintiff.  Accordingly, the Court holds that Defendant's motion should not be dismissed for that reason.

*v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## III.    Discussion

Plaintiff alleges that Defendant wrongfully terminated him because of his race in violation of his civil rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* (Pl.'s Resp. 1.)  Title VII prohibits an employer from discriminating against an employee with respect to compensation, terms, conditions, or privileges of employment based on that individual's national origin.  *See* 42 U.S.C. § 2000e-2(a)(1).  The ultimate question in every case alleging disparate treatment on the basis of national origin is "whether the plaintiff was the victim of intentional discrimination."  *Curry v. SBC Commc'ns, Inc.*, 669 F. Supp. 2d 805, 824 (E.D. Mich. 2009) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)).  To establish intentional discrimination, the plaintiff must demonstrate direct evidence of discrimination, or present sufficient circumstantial evidence to allow an inference of discrimination.  *Id.* (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003)).

Direct evidence does not require the jury to draw any inferences to determine that the adverse employment action was motivated, at least in part, by racial prejudice.  *Id.* at 825 (quoting *In re Rodriguez*, 487 F.3d 1001, 1007 (6th Cir. 2007)).  "Evidence of discrimination is not considered direct evidence unless [an improper] motivation is explicitly expressed."  *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006).  Here, Plaintiff has not presented any evidence of direct discrimination by Defendant.

Even without direct evidence though, a plaintiff can still prevail if he establishes an inferential case of discrimination under the burden-shifting analysis the United States Supreme

Court articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Curry*, 669 F. Supp. 2d at 824-25.  Under *McDonnell Douglas*, which was clarified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), the plaintiff must first prove a *prima facie* case of discrimination.  *Burdine*, 450 U.S. at 252-53; *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 342 (6th Cir. 1998).  If the plaintiff makes out a *prima facie* case, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse action.  *Burdine*, 450 U.S. at 252-53 (quoting *McDonnell Douglas*, 411 U.S. at 802).  If the defendant is able to articulate a legitimate reason, the burden then shifts back to the plaintiff who must prove the given explanation was merely a pretext.  *Id.* at 256.

### A.    The *Prima Facie* Case

A plaintiff establishes a *prima facie* case of discrimination by demonstrating that "(1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the position, and (4) she was replaced by a person outside of the protected class." *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) (quoting *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003)) (quotation marks omitted).  The fourth prong can also be satisfied by showing that the plaintiff was treated differently than similarly situated employees who did not belong to the protected class.  *Id.* (quoting *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001)).  For the following reasons, the Court holds that Plaintiff has not established a *prima facie* case of discrimination.

Although the first three prongs are satisfied because Plaintiff is African American (a protected group), was terminated (an adverse employment action), and arguably qualified for the position, Plaintiff has presented no evidence from which a reasonable jury could infer that the fourth

9

criterion is met.  There is nothing in the record indicating that Plaintiff was replaced by someone outside of his protected group.

Furthermore, and significantly, Plaintiff has presented no evidence demonstrating that he was treated differently than similarly situated employees.  In fact, Plaintiff explicitly testified that he did not know whether other employees were asked to provide doctor's notes upon returning to work after a medical leave of absence, or whether they were under the same degree of scrutiny or put in an uncomfortable environment as he was.  (Hodges Dep. 104:19-24, 148:23-25, 156:7-157:2.) Specifically, when asked "[h]ow do you know that Acuff didn't treat any employee returning from a leave the same way and ask for a doctor's note[,]" Plaintiff responded "I have no idea."  (*Id.* at 104:19-24.)  Although in his deposition Plaintiff mentioned other employees who were given verbal counseling when they violated the notification policy, he also admitted that in those cases the employee only applied to one position without notifying their supervisors and had not already been warned about the issue.  (*Id.* at 138:17-139:16.)  Plaintiff stated that he did not know of any instances where an employee was alleged to have violated the policy several times.  (*Id.*)  Because Plaintiff has not raised a genuine issue of material fact with respect to the fourth prong of the *McDonnell-Douglas* test, the Court holds he has failed to make out a *prima facie* case of racial discrimination.  As a result, the Court GRANTS Defendant's motion for summary judgment.

### B.    Pretext

Even assuming Plaintiff has established the necessary elements to make out a *prima facie* case, Defendant would still be entitled to summary judgment.  Defendant has clearly articulated a legitimate, non-discriminatory reason for terminating Plaintiff – namely his violation of corporate policy by failing to notify his supervisor before applying for internal job openings and for falsifying

corporate documents.  As a result, the burden would then shift back to Plaintiff to put forth evidence demonstrating that those reasons are merely pretext.  *See Burdine*, 450 U.S. at 256.  Generally, pretext can be shown by evidence that: (1) the proffered reason has no basis in fact; (2) the articulated explanation did not actually motivate the adverse action; or (3) the stated reason was insufficient to motivate the action.  *Curry*, 669 F. Supp. 2d at 828 (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

The plaintiff cannot meet this burden by simply demonstrating that the stated reason was pretextual.  Rather, the employee must prove that it was a pretext for unlawful discrimination.  *Hazle v. Ford Motor Co.*, 464 Mich. 456, 465-66 (2001).  It is insufficient to show that the employer's decision was wrong or mistaken because the factual dispute is whether discriminatory animus motivated the employer not whether the employer is "wise, shrewd, prudent, or competent."  *Id.* at 476; *see also Comiskey v. Auto. Indus. Action Group*, 40 F. Supp. 2d 877, 896 (E.D. Mich. 1999) ("[T]he question is not whether the employer's reasons are *right*, but whether the employer's description of its reasons is *honest*.") (quoting *Kariotis v. Navistar Int'l Trans. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997))  (emphasis in original).  To avoid summary judgment, the plaintiff only needs to establish a genuine issue of material fact as to whether the employer's proffered reason was a pretext.  *Hazle*, 464 Mich. at 465 n.10.  "[T]he ultimate question is whether the plaintiff established a question of material fact upon which reasonable minds could differ regarding whether discrimination was a motivating factor, i.e., made a difference, in the employer's decision."  *Ahmed v. Visteon Auto. Sys.*, No. 248411, 2004 WL 2601206, at *3 (Mich. App. Nov. 16, 2004).

In the instant case, even assuming that Plaintiff has established a genuine issue of material fact regarding whether or not Defendant's reason was pretextual, there is simply no evidence that

11

it was a pretext for discrimination.  Plaintiff himself testified that he has no evidence to support his

claim of discrimination.  At his deposition, the following exchange took place:

> Q:     And do you have any facts or evidence to support your claim
>         that race was a factor in the termination decision?
>
> A:     Not specific hard evidence, no.
>
> Q:     Any – any evidence whatsoever?
>
> A:     No.

(Hodges Dep 138:11-16.)  Plaintiff further testified:

> Q:     So, in terms of your conclusion that anything that Acuff did
>         to you was motivated at least in part based on your race,
>         that's pure speculation on your part.
>
> A:     I can only conclude that there – that he may or may not have
>         done that with anyone else but from the discovery documents
>         that were sent and the correspondence that was transpired
>         between Kimberly Speer and Mr. Acuff, he – this was the
>         first time that this happened.  So it had not happened to
>         anyone else.  I will grant you that.
>
> Q:     All right.  And even if it didn't happen to anyone else, it still
>         doesn't mean that your race was a factor.
>
> A:     That could be true.
>
> Q:     So, the only thing that brings us back to race is your
>         speculation that race was a factor.
>
> A:     Yeah.  It was my firm belief that race was a factor that led
>         him to create the atmosphere that he did.  That's –
>
> Q:     Okay.
>
> A:     – my belief.
>
> Q:     And your belief, whether it's relative to the doctor's note or
>         your termination or any other treatment by Acuff, is based on
>         speculation.

A:       Sure.

(*Id.* at 149:1-25.)  When pressed for specific examples that would indicate racism, Plaintiff replied

"I can't give you any concrete – he never came out and called me an N word or you black this or

whatever[,]" and explained "this is my feeling and I understand, you know, a lot of things I guess

things can be based on feelings but I just got to go by what I felt was going on."  (*Id.* at 142:20-

143:14.)

Allegations by employees that they "believed" they were being discriminated against,

without more, cannot sustain a discrimination claim.  *See, e.g.*, *Holmes v. J.P. Morgan Chase Nat'l

Corp. Servs., Inc.*, No. 09-10642, 2010 WL 259051, at *10 (E.D. Mich. Jan. 20, 2010) ("[S]ubjective

beliefs are wholly insufficient to establish a claim of discrimination as a matter of law.") (quoting

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992)) (quotation marks and ellipses omitted);

*see also Fix v. Unisys Corp.*, 782 F. Supp. 343, 346 (E.D. Mich. 1991).  In *Holmes*, the court granted

the defendant's motion for summary judgment because the plaintiff admitted that her evidence was

limited to "a feeling, and rumor and innuendo, that's it."  2010 WL 259051, at *10.  As in *Holmes*,

Plaintiff has admitted that his allegations are based entirely on his feelings and speculation that

Defendant discriminated against him on the basis of race.[5]  As a result, summary judgment would

be appropriate even if Plaintiff had made out a *prima facie* case.

---

[5] Significantly, Plaintiff testified as follows at his deposition:

Q:      And you never made any complaints of discrimination or
         harassment during your employment?

A:      No, sir, unh-unh.

(Hodges Dep. 93:7-9.)

## IV. Conclusion

For the reasons stated above, the Court GRANTS Defendant's motion for summary

judgment.

**SO ORDERED.**


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: June 3, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on
June 3, 2011.


S/Denise Goodine
Case Manager